UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CURTIS KING,

     Applicant,

v.                            CASE NO. 8:22-cv-659-SDM-SPF

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

King applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his conviction for lewd and lascivious molestation, for which King is imprisoned for life. Numerous exhibits ("Respondent's Exhibit") support the response. (Doc. 8) The respondent (1) argues that some grounds are not fully exhausted and, consequently, are procedurally barred from federal review and (2) admits the application's timeliness. (Response at 8, Doc. 3)

## **I. BACKGROUND**[1]

King was living with his girlfriend and her two children. One evening before going to her midnight shift the girlfriend awakened to find that King was not in bed. Upon entering the family room the girlfriend saw King attempting to masturbate her

---

[1] This summary of the facts derives from King's brief on direct appeal. (Respondent's Exhibit 21)

four-year-old son.  The girlfriend told King to get his property and move out, took her two children to their father's house, and went to her work.  Two days later the girlfriend reported the incident to the police.  At the girlfriend's request, King returned to the house and was interviewed by the police.  After waiving his *Miranda* rights, King confessed to the inappropriate touching.

In his application King alleges four grounds for relief.  The first two grounds allege that trial counsel rendered ineffective assistance, and the last two grounds allege that the trial court committed error, which grounds the respondent contends are unexhausted as a federal claim.

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that Grounds Three and Four are procedurally barred from federal review because King failed to fully exhaust his available state court remedies by not arguing on direct appeal that the alleged trial court error violated a constitutional right.  An applicant must present each claim to a state court before presenting the claim to a federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  "To provide the State with the necessary

'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

## **Grounds Three and Four:**

The respondent correctly argues that King never presented to the state court the federal claims that the trial court erred in both denying his motion to suppress his statement to the police (Ground Three) and refusing a special jury instruction (Ground Four). King identified the substance of Grounds Three and Four as Issues I and IV on direct appeal (Respondent's Exhibit 21), but he limited each issue as a violation of state law and not as the violation of a federally protected right. The exhaustion requirement is not met if a defendant fails to alert the state appellate court that the trial court allegedly violated a federally protected right. As *Reese* explains, 541 U.S. at 32, an applicant must alert the state court that he is raising a federal law claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a

habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). An applicant must present to the federal court the same claim that was presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "[M]ere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). State procedural rules preclude King from returning to state court to present his federal claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). King's failure to properly present his federal claim in the state court results in a procedural default. *See Shinn v. Ramirez,* 596 U.S. 366, 378 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would

dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006)).

King procedurally defaulted Grounds Three and Four by not "federalizing" each ground in state court, and, as a consequence, each ground is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice."  *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  The basis for "cause" must ordinarily reside in something external to the defense.  *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, King must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction."  *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

King establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, Grounds Three and Four are procedurally barred from federal review and are not entitled to a determination on the merits. Grounds One and Two are entitled to a review on the merits.

### III.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court

> on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of

the state court decision that we are to decide.").  The phrase "clearly established

Federal law" encompasses only the holdings of the United States Supreme Court "as

of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell*, 535 U.S. at 694.  A federal court

must afford due deference to a state court's decision.  "AEDPA prevents defendants

— and federal courts — from using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766,

779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult

to meet,' . . . and 'highly deferential standard for evaluating state-court rulings,

which demands that state-court decisions be given the benefit of the doubt' . . . .")

(citations omitted).

When the last state court to decide a federal claim issues a reasoned and

explanatory opinion, "a federal habeas court simply reviews the specific reasons

given by the state court and defers to those reasons if they are reasonable." *Wilson v.

Sellers*, 584 U.S. 122, 125 (2018).  When the relevant state-court decision is not

accompanied with reasons for the decision, the federal court "should 'look through'

the unexplained decision to the last related state-court decision that does provide a

relevant rationale [and] presume that the unexplained decision adopted the same

reasoning." *Wilson,* 584 U.S. at 125.  The State may contest "the presumption by

showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson,* 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed King's convictions and sentence. (Respondent's Exhibit 23) Similarly, in another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of King's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 33) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec., Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the

> state-court decision at the time it was made. It follows that the
> record under review is limited to the record in existence at that
> same time, i.e., the record before the state court.

King bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of King's claims warrants deference in this federal action. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 29) King's federal application presents the same grounds of ineffective assistance of counsel that he presented to the state courts.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

King claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court

set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

King must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 690. To meet this burden, King must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *See Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. As *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (italics original), explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from

- 12 -

> among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct.
> 770. Such decisions are particularly difficult because certain tactics
> carry the risk of "harm[ing] the defense" by undermining
> credibility with the jury or distracting from more important issues.
> *Id.*, at 108, 131 S. Ct. 770.

And *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains that King

cannot meet his burden merely by showing that the avenue chosen by counsel proved

unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done. Nor is the test even what most good lawyers would have
> done. We ask only whether some reasonable lawyer at the trial
> could have acted, in the circumstances, as defense counsel acted at
> trial . . . . We are not interested in grading lawyers' performances;
> we are interested in whether the adversarial process at trial, in fact,
> worked adequately.

*Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the

obvious:  the trial lawyers, in every case, could have done something more or

something different.  So, omissions are inevitable . . . .  [T]he issue is not what is

possible or 'what is prudent or appropriate, but only what is constitutionally

compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Additionally, *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014),

discusses the required extent of counsel's investigation:

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d at
> 1317. "[C]ounsel has a duty to make reasonable investigations or
> make a reasonable decision that makes particular investigations
> unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066
> (emphasis added). "[C]ounsel need not always investigate before
> pursuing or not pursuing a line of defense. Investigation (even a
> nonexhaustive, preliminary investigation) is not required for
> counsel reasonably to decline to investigate a line of defense
> thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the
> reasonableness of an attorney's investigation . . . a court must

consider not only the quantum of evidence already known to
counsel, but also whether the known evidence would lead a
reasonable attorney to investigate further." *Wiggins*, 539 U.S. at
527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty

to raise a frivolous claim).

As stated above, Section 2254(d) requires King to prove that the state court's

decision was "(1) contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so."  *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. at 739 ("This

analysis is 'doubly deferential' when, as here, a state court has decided that counsel

performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant  must overcome this

"'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga.

Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due,

it is a 'rare case in which an ineffective assistance of counsel claim that was denied

on the merits in state court is found to merit relief in a federal habeas proceeding.'")

(quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v.

Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view

Pooler's ineffective counsel claim — which is governed by the deferential *Strickland*

test — through the lens of AEDPA deference, the resulting standard of review is

'doubly deferential.'").  "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'  Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

In summarily denying King's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 29 at 2)  Because the state court rejected the grounds based on *Strickland*, King cannot meet the "contrary to" test in Section 2254(d)(1).  King instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not independently assessing whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each ground begin with the state court's analysis.

**<u>Ground One:</u>**

King alleges that trial counsel rendered ineffective assistance by not moving for King's evaluation for competency.  The post-conviction court determined that King failed to adequately allege a claim and denied the conclusory assertion as follows (Respondent's Exhibit 29 at 3):

In his initial motion, Defendant failed to allege specific facts demonstrating that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding —and whether he [had] a rational as well as factual understanding of the proceedings against him" at the time of trial. *Dusky*, 362 U.S. at 402. Nor did he allege specific facts that "set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to [his or her] competency." *Thompson*, 88 So. 3d at 319. Thus Defendant's allegations were conclusory and insufficient. *Griffin*, 866 So. 2d at 9. Accordingly, the Court struck the claim, gave Defendant leave to amend within 60 days, and warned that failure to amend would result in the claim being denied with prejudice. *See* Fla. R. Crim. Pro. 3.850(f)(2), (f)(3).

In his amended motion, Defendant essentially restates his claim, adding an allegation that he "is clearly incompetent," and that his competency has been "questioned by all parties." Those allegations are conclusory and insufficient as they fail to set forth specific facts demonstrating Defendant's incompetency. *See Griffin*, 866 So. 2d at 9. Accordingly, as Defendant has failed to amend this claim to make it facially sufficient, the claim is denied with prejudice. *See* Fla. R. Crim. Pro. 3.850(f)(2), (f)(3).

Prosecuting a defendant who is incompetent is unconstitutional. *Medina v. California*, 505 U.S. 437, 439 (1992) ("It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.") (citing *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966)).  However, a defendant has the burden to prove incompetence.  *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996) ("[A] State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence.").  And "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina v. California*, 505 U.S. 437, 450 (1992).

The state court record shows that defense counsel never moved for a determination of King's competency and, as the respondent correctly argues, King "did not allege any specific facts or provide any mental health records demonstrating that he was incompetent at any time during the pendency of his state criminal proceedings." (Doc. 8 at 7)  Although counsel unsuccessfully moved to suppress certain statements based in part on King being "emotionally handicapped" (Respondent's Exhibit 9 at 4–7), defense counsel did not raise a doubt about King's competency.  King presents no basis for determining that the state court's decision is an unreasonable application of *Strickland*.  Consequently, the state court reasonably denied the claim in Ground One as conclusory and, consequently, not entitled to relief under *Strickland*.

**<u>Ground Two:</u>**

King alleges that trial counsel rendered ineffective assistance by not properly investigating his case because counsel did not depose the state's primary witness, King's girlfriend.  The post-conviction court determined that trial counsel's performance was neither deficient nor prejudicial and denied the claim as follows (Respondent's Exhibit 29 at 4–5):

> In his initial motion, Defendant claimed that counsel rendered ineffective assistance by failing to "conduct a proper investigation for a factual defense." He alleged that counsel failed to depose the State's witnesses to allow her to develop information "for proper impeachment." He contended that had counsel done so, then he would have been acquitted.
>
> In its [earlier] order, the Court found this claim to be facially insufficient. In order for the Court to consider a claim that counsel rendered ineffective assistance for failing to investigate, a

defendant must make specific factual allegations regarding:
(1) counsel's awareness of the need to investigate specific
evidence, *Henyard v. State*, 883 So. 2d 753, 762 (Fla. 2004);
(2) the substance of the specific evidence that counsel should
have discovered through an investigation but did not, *Martin v.
State*, 205 So. 3d 811, 813 (Fla. 2d DCA 2016); and (3) an
explanation of how counsel's failure to discover and present
specific evidence prejudiced the outcome of trial, *cf. Nelson v. State*,
875 So. 2d 579, 582–83 (Fla. 2004) (stating the same standard for
omitted witness testimony). In his initial motion, Defendant
alleged only that counsel should have deposed some witnesses to
develop some facts that could be used for impeachment, without
identifying those witnesses or what information those depositions
would have revealed, or explaining how that information, used for
impeachment, would have led to his acquittal. Thus Defendant's
allegations were conclusory and insufficient. *Griffin*, 866 So. 2d at
9. Accordingly, the Court struck the claim, gave Defendant leave
to amend within 60 days, and warned that failure to amend would
result in the claim being denied with prejudice. *See* Fla. R. Crim.
Pro. 3.850(f)(2), (f)(3).

In his amended motion, Defendant specifically alleges that
counsel should have deposed [his girlfriend]. He alleges that a
deposition would have "evinced perjured testimony" because she
"changed or altered her statements prior to state pressure" and
was "clearly in fear of losing her children." He also alleges that
[she] had been "Baker acted at least (4) times," rendering her
mental capacity suspect. He alleges that had counsel discovered
and presented this evidence, then the result of the proceeding
would have been different.

As to the statements he alleges counsel should have discovered at
a deposition, Defendant's allegations are conclusory. He has not
alleged what specific statements counsel would have obtained at
the deposition and how those specific statements could then be
used to impeach [his girlfriend]. Instead, he has alleged the
conclusion that he would ask the jury to draw from those
statements—that [his girlfriend] testified against him due to State
pressure. Therefore, those allegations are conclusory and
insufficient. *See Griffin*, 866 So. 2d at 9.

As to the evidence that [his girlfriend] was "Baker acted at least (4)
times," that evidence would not be admissible. Generally,
impeachment on a collateral issue is impermissible. *Foster v. State*,
869 So. 2d 743, 745 (Fla. 2d DCA 2004); *Lawson v. State*, 651 So.
2d 713, 715 (Fla. 2d DCA 1995). The test for determining whether
a matter is collateral or irrelevant "'is whether the proposed

testimony can be admitted for any purpose independent of the contradictions.'" *Lawson*, 651 So. 2d at 715 (quoting *Dupont v. State*, 556 So. 2d 457, 458 (Fla. 4th DCA 1990)). "If the evidence is relevant to independently prove a material fact or issue, or if it goes to discredit a witness by pointing out bias, corruption, or lack of competency, it will be allowed." *Lawson*, 651 So. 2d at 715. The only ground for admissibility the Court could conceivably identify for [the girlfriend]'s alleged commitments would be based on lack of competency, as that fact would not be admissible to show her bias, corruption, or to show that it was more or less likely that the Defendant committed the crime charged.

"A witness is presumed competent to testify until the contrary is established." *Hayward v. State*, 183 So. 3d 286, 327 (Fla. 2015). The burden is on the party challenging the witness's competency. *Id.* "A witness is incompetent to testify if the witness is unable to communicate to the jury, unable to understand the duty to tell the truth, or is unable to perceive and remember events." *Id.* In regards to a witness's ability to understand the duty to tell the truth, "some testimony about an adult witness's mental inability to understand the concept of an oath to tell the truth, as opposed to his character flaw of having a proclivity to lie, is necessary before a court may completely disqualify the witness under this section. Absent such testimony, a witness's previous lies are matters for impeachment and argument about his credibility." *Tampa Brass & Aluminum Corp. v. Am. Employers' Ins. Co.*, 709 So. 2d 548, 549 (Fla. 2d DCA 1998) (emphasis added). The bare fact that [the girlfriend] was allegedly "Baker acted at least (4) times" is not sufficient to demonstrate that she lacked competency to testify. Therefore, because the evidence would not have been admissible, counsel was not deficient and Defendant was not prejudiced by counsel's failure to discover and present evidence of [the girlfriend]'s alleged prior commitments.

This claim is denied.

To prevail on a claim of ineffective assistance of counsel, *Strickland* requires proof of both deficient performance and prejudice. The state court held that King failed to identify a statement that counsel would have discovered in a deposition that she could use to impeach a witness and that the evidence of the girlfriend's mental history was inadmissible under state law. In other words, the state court determined

that King proved neither deficient performance nor prejudice.  King presents no basis for determining that the state court's decision is an unreasonable application of *Strickland*.  Consequently, the state court reasonably denied the claim in Ground Two as either conclusory or not entitled to relief under *Strickland*.

## V.  CONCLUSION

King fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

King's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against King and **CLOSE** this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

King is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial

of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a

COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a

substantial showing of the denial of a constitutional right."  To merit a COA, King

must show that reasonable jurists would find debatable both the merits of the

underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would

"find debatable" either the merits of the grounds or the procedural issues, King is

entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is

**DENIED**.  King must obtain permission from the circuit court to appeal *in forma*

*pauperis*.

ORDERED in Tampa, Florida, on February 11, 2025.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE